Percy A. Brown & Co., Appellant, *v.* Raub et al.,
Appellants.

272

Argued April 16, 1947.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Arthur H. James,* with him *Robert J. Doran,* for plaintiff.

*Robert T. McCracken* and *Joseph P. Flanagan,* with them *J. Q. Creveling* and *M. F. McDonald,* for defendants.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 30, 1947:

This proceeding began by the plaintiff's filing a bill in equity seeking an injunction restraining the defendant, Raub, from making certain use of a 10-foot alley in the city of Wilkes-Barre. This defendant filed an answer denying most of plaintiff's allegations and asked for an injunction restraining the plaintiff from surcharging its easement on the same alley and from maintaining a certain iron barrier and a certain chain across that alley, and maintaining another barrier across an alleged cross alley, and from maintaining a large concrete block across a 15-foot opening extending north from East Northampton St., Wilkes-Barre.

The court dismissed plaintiff's bill and in response to defendant's complaint and prayer in its Answer and New Matter, the court ordered the plaintiff to remove (as it had voluntarily agreed to do) the barrier across the end of the alley at 60 South Main St., Wilkes-Barre and restrain the plaintiff, its agents and employees from maintaining a chain across that alley 20 feet from the street. (Plaintiff had declared it was willing to do this). Defendant's complaint as to the plaintiff's erection of a barrier and fence on the western end of an alleged cross alley 30 feet wide extending eastward from the North end of the 10-foot alley was found to be without merit, the "cross alley" was adjudged to be non-existent and the fence plaintiff erected at the entrance to the alleged "cross alley" was held to be on plaintiff's own land. Defendant's complaint that the plaintiff had within three months prior to the filing of the bill erected a large concrete block building across a 15-foot alley extending from East Northampton St. northward was found to be without merit as the defendants had no rights whatever in that 15-foot "alley" or opening.

The pleadings consist of (1) Bill in Equity; (2) Defendant Raub's Answer and New Matter; (3) Plaintiff's Reply to New Matter; (4) Defendant's Amendment to Answer and New Matter; and (5) Answer and New Matter of The Second National Bank of Wilkes-Barre, Intervening Defendant.[1]

At the Northeastern corner of South Main and East Northampton Sts., Wilkes-Barre, there are four lots facing westward on the east side of Main Street and extending backward to an alley 10 feet wide, to wit (as designated by us, South to North) lots A, B, C, and CC. Lot A has a frontage of 55.15 feet, lot B has a frontage of 34.5 feet, lot C has a frontage of 20.9 feet, and lot CC has a frontage of 34.85 feet. These lots are rectangular; their total width is 145.40 feet and their total depth is 115 feet.

By a duly recorded deed of partition dated October 2, 1861, executed by Eliza I. Perry, Harriet Perry, and Mary Ann Perry, a tract of their land then extending 148 feet on South Main St. and 222 feet on East Northampton St. was divided into six lots and an alley,[2] and the three lots on South Main St. were designated (South to North) as lots A, B, and C. East of the 10-foot alley and on Northampton St., there are three rectangular lots belonging to the plaintiff and they are designated in the Perry partition deed as (West to East) lots D, E, and F, with these respective frontages; 50.55 feet, 28.45 feet, and 28 feet. Their depth is apparently equal to the combined alley widths of the four lots, A, B, C, and CC. These three lots, D, E, and F, constitute the tract of land

---

[1] The Intervening Defendant makes the same claims and asks for the same relief as does the defendant Raub.

[2] The four lots now facing South Main St. for a distance of 145.40 feet apparently constitute the "148 feet" mentioned in the 1861 deed of partition as lots A, B, and C. When the Executor of the Perry estate, Espy, conveyed by separate deeds to different grantees, between 1895 and 1899, all the land embraced in the Perry tract, he changed lots A, B, and C into four lots and established a 10-foot alley five feet nearer Main St., thereby changing the width of lot D.

which B. M. Espy, Executor of Eliza Perry, deceased, and Mary Perry, deceased, conveyed to M. Letitia Sturdevant et al. on December 28, 1899, by a duly recorded deed.

Lot D contains a three-story building which plaintiff rents as a store and for apartments. Lot E is vacant to a depth of 20 feet. The eastern two-thirds of the remainder of this lot is in part occupied by a small building extending backward about 70 feet. Lot F contains plaintiff's refrigeration plant and produce department. The Burgunder lot, which is contiguous to the eastern side of lot F, has a frontage of 86 feet and depth of 197.05 feet and on it plaintiff has (1) a unified meat market and grocery store and (2) a unified cafeteria and restaurant. Plaintiff began its business on this Burgunder lot in 1909. These properties are numbered in an easterly direction 14 to 32.

On August 9, 1921, Percy A. Brown purchased lot F and on August 17, 1921, he purchased lot E, then known as "the Thomas or Enzian property" (a part of "the Sturdevant Estate"). The grantors conveyed to him the right to use "for purposes of egress and ingress, to and from the premises hereby conveyed, a strip of land, twenty feet wide across the Northeasterly or rear end of premises known as Nos. 14 and 16 East Northampton St.," and the right to use the ten-foot alley. The court found as a fact that from that time, Percy A. Brown and his July 3, 1922 successor, Percy A. Brown & Co. "have continuously used the ten-foot alley for the transportation of food and supplies to and from buildings of the plaintiff, including buildings on the Burgunder lot as well as the buildings on the Perry lots."

On October 1, 1927, Percy A. Brown & Co. purchased from the Sturdevent Estate lot D adjoining the 10-foot alley. This deed contains this recital: ". . . Together with all the right, title and interest of the grantors herein in and to ten foot alley herein referred to and the right to use in common the space on the rear end of the premises described in a certain deed wherein Eliza-

beth M. Richardson, et al., are the grantors, and Percy A. Brown, et al., are the grantees, dated August 17, 1931, and duly recorded in the Recorder of Deed's office in and for Luzerne County, Pa., in Deed Book No. 555, page 392."

Raub has been engaged since 1927 in the retail shoe business and also sells "hosiery, handbags, facings and polishes", at his store at 60-62-62½ and 64 South Main St., Wilkes-Barre, with a frontage of 34.85 feet. This is also the "main headquarters" (as he describes it) of nine stores he maintains at other places. In April 1927 he leased the basement storeroom at 62½ South Main St. from the agent of Jennie Weitzenkorn. On March 6, 1940 he leased the second story at 62½ South Main St. from the Second National Bank, the Executor and Trustee of the Jennie Weitzenkorn Estate. In 1941 he leased the front half of the second floor of the "Schneider property" at 60 South Main St. In February 1944 he purchased this No. 60 property. It has a frontage of 19 feet and extends eastward from South Main St. *110* feet along the northern side of lot CC, then for *10* feet it is the "dead end" of the 10-foot alley and then for *107* feet it adjoins lots D, E, and F on their northern ends. It is occupied by a building 19 feet wide and 221.52 feet deep. The front part of this building for a depth of 80 feet is 3 stories high and the remainder of the 221½ foot building is 2 stories high. The eastern boundary of the No. 60 property is the west side of the rear end of the Burgunder lot, supra. *The ownership of lot No. 60 confers no rights whatever in the 10-foot alley,* though there is a door in the south side of No. 60 which opens into the end of the alley. In 1945 Raub made an opening in the fire wall on the second floor between premises 60 and 62. Since that time he has been using part of the second floor of *60* South Main St. for "storage" of goods taken from No. *62.* He testified that "the maximum percentage" of merchandise which he stores at 60 South Main St. is about "10 percent" and "the minimum about

3, 4, or 5 percent." Raub testified that he receives merchandise into his stores at 62-62½-64 South Main St. "anywhere from once or twice and sometimes ten times a day" by means of trucks which come up the alley and deliver merchandise in cartons at the rear of 62 South Main St. and which reach his unloading platform[3] at No. 62 by coming "in over the driveway alongside Mr. Brown's market." He testified that he takes in "about ninety to ninety-five percent of" his merchandise "in the back way", and "eighty percent" of these goods are "distributed to his nine other stores."

It is obvious that the 10-foot alley serves a useful purpose for both the plaintiff and the defendant in the conduct of their respective extensive businesses and that in the alley's use their interests have conflicted.

The plaintiff in its bill complains that Raub transports large quantities of goods from the alleyway in the rear of 62 South Main St. for storage in the premises located at 60 South Main St., thereby causing great inconvenience, annoyance, and damage to the plaintiff and to its easement on the alley, and it asks for an injunction restraining Raub from transporting any goods in the alley for delivery at No. 60 South Main St.

Raub in his first answer filed on July 6, 1945 denied that he was using the alleyway for the transportation of goods to 60 South Main St. and in the "New Matter" included in his Answer he declared that though the plaintiff as owner of lots E and F acquired no right to the use of the 10-foot alley it was using the alley in connection with its business conducted on lots E and F and on the Burgunder lot. He complained also that the plaintiff had unlawfully erected an iron barrier in front of No. 62 thereby preventing defendant's use of the alley beyond the barrier, and that the plaintiff has erected along the entire width of the alley, approximately

---

[3] The platform is 20 feet long, 5 feet wide, and 4 feet 3 inches in height. It is all on the No. 62 property and its eastern side borders the alley for a distance of 20 feet.

20 feet from the line of East Northampton St., a heavy iron chain with lock for the purpose of impeding traffic in that alley. Raub asked that the plaintiff be enjoined from maintaining these two barriers. He also charged that the plaintiff permitted his customers to use the 10-foot alley in driving their cars from Northampton St. through the alley to a parking site used on the rear of lots E and F.

Plaintiff in its reply to the new matter admits that he is using the alley for transportation of merchandise to and from lots E and F and from the Burgunder lot and declared that it has a legal right to do this. It claims that as the owner of lots E and F it has the right to use the alley and that as owner of the Burgunder lot it has so used the alley for over 21 years as to acquire a prescriptive right to that use. Plaintiff also admits that its customers have been using the 10-foot alley as defendant charges and avers that plaintiff had the legal right to permit them to do so. The plaintiff admitted the construction of the iron barrier and the chain but said that these were erected without any objection by and from the rightful owners or users of the alley. Plaintiff admits that the removable chain was placed across said alley solely to prevent the unlawful use by strangers, of said alleyway, especially after business hours.

On December 12, 1945, defendant Raub filed an amended answer containing additional new matter. He claims that there has long been a "cross alley" 30 feet in width, extending eastward at right angles to the 10-foot alley and at the rear of lots D and E and that he has the right to use this 30-foot alley by reason of his lease on No. 62 and because this 30-foot alley is a granted "opening" on the alley. He also avers that he has acquired by prescription the right to use a strip of land 15 feet in width extending from this cross alley along the western side of lot E to East Northampton St. He complained that the plaintiff has erected a large concrete block building across the 15-foot alley against

the protest of defendant and to the prejudice of Raub's rights. He asked that the plaintiff be restrained not only from maintaining the barriers across the 10-foot alley and the "cross alley" but also from maintaining the barrier in the 15-foot alley, and that the plaintiff be restrained from using any of these alleys for the transportation of goods to the building on the Burgunder lot and that the plaintiff be ordered to remove the concrete block on the 15-foot alley.

Plaintiff in its reply to the new matter denies that there was an "opening" consisting of a "cross alley" 30 feet in width running eastward at right angles to the 10-foot alley and that the defendant or any of his predecessors in title ever became vested in any rights in any such "cross alley" or acquired by prescription the use of a 15-foot "alley" running parallel to the 10-foot alley and that "in truth and in fact no such 15-foot alleyway ever existed."

On February 2, 1946, the Second National Bank, which is Trustee of the Estate which owns the property at 62 South Main St., intervened with leave of court, as a party defendant and joined in the allegations and prayer of defendant Raub's answer and new matter.

An analysis of these pleadings and counter-pleadings reveals that they present five issues, to wit: (1) Is the defendant by using the 10-foot alley for the transportation of goods to the rear of 62 South Main St. and then removing from 3 to 10 percent of these goods to 60 South Main St. through an opening in the partition on the second floor, surcharging his easement rights in the 10-foot alley, thereby unlawfully interfering with the plaintiff's easement rights in that alley? The court answered this question in the negative .

(2) At the time of the conveyance from Espy of Perry lot C, now occupied by the Weitzenkorn Estate and Raub, was there a "cross alley" or "opening" leading from and to the 10-foot alley in the rear of lots D and E in which the grantees of Perry lots A, B, and C obtained

by grant an easement? The court answered this question in the negative.

(3) Did Raub and his predecessors in title acquire the right to use a cross alley and also a driveway from the "cross alley" to Northampton St. by prescription? The court answered "No", and declared that their use of the land referred to amounted to no more than "a permissive use of a vacant lot."

(4) Does the plaintiff as owner of lots E and F have a right to use the 10-foot alley for purposes incidental to the business he conducts in properties erected on lots E and F? The court answered this in the affirmative without stating whether this right was acquired by grant or by prescription.

(5) Did the plaintiff as the owner of the Burgunder lot acquire by prescription the same right to use the 10-foot alley for purposes incident to his business conducted on a property on that lot as he has as the owner of lots D, E, and F? The court answered this question in the affirmative.

The court's decision on question No. 1 is based on its finding No. 11, reading as follows: "There is no testimony in this case that the plaintiff, Percy A. Brown and Company, has been inconvenienced, annoyed, damaged or injured by reason of this temporary storage in No. 60 South Main St.;" and on the court's statement that the defendant's conduct is "not prejudicial to the plaintiff's rights" and the court's further statement that "There is no testimony warranting the conclusion that plaintiff's rights to the use of the alley are substantially interfered with by reason of the fact that a portion of the merchandise transported through it and removed into No. 62 South Main St. is temporarily stored in No. 60 South Main St. . . ." The court said: "We recognize the well settled rule in this State that a right of way over an alley, appurtenant to a particular lot or lots, cannot lawfully be used as a means of access to another lot to which it is not appurtenant." (Citing cases). "Here,

however, the primary use made of the alley by the defendant is for the purpose of removing goods to and from the property to which it is appurtenant, and such use is, we think, both lawful and proper."

These findings are not supported by the evidence. Nor do we agree that Raub can use his premises at 62 as a conduit for the transfer to No. 60 of merchandise which has been brought up the alley. The tenor of the testimony of Percy A. Brown, President of the plaintiff company, is that since Hyman Landau vacated the premises at 60 and Raub acquired them in 1937, the plaintiff has been increasingly annoyed by Raub's excessive use of the alley with trucks for the delivery of goods to No. 62 and to No. 60 *via No. 62.* Mr. Brown testified: "after Landau went out, he [Raub] subsequently had bigger trucks there, and sometimes there would be two or three of those trucks and they were the long trailers, and they would come back in there, and then we would have to move the cars around to allow them to get in there, and if we didn't do that, they couldn't get out." Mr. Brown said that he had seen on the second floor of No. 60 large cartons around 30 inches long by 18 inches wide piled up in front of the windows, and that he doesn't know of any other entrance that Raub uses except the rear of No. 62. He complained to Raub "several times" about Raub's "unloading cartons and blocking us up." He said he told Raub: "You sneaked in there and put the opening there without any right to do it" and Raub said, "I will fix it." Mr. Brown added: "I called him [Raub] three times after that, and he didn't answer that, so the next time I called him, I said, I am through with you, and I am going to take you to Court."

Raub himself admitted that 95 percent of his goods were delivered through the alley to the rear of 62. He said that the maximum of merchandise he takes from the alley *through 62 into 60* would be about 10 percent, and he was asked: ". . . since the filing of this bill down

to the present time, you are conducting and managing the goods that are taken through the rear of 62, in exactly the same manner as you did at the time of the filing of this bill," and he answered, "Certainly." He also testified that he conducted stores at nine places in Pennsylvania and that his South Main St. store is "the main headquarters." He was asked to state what percentage of goods brought into 60 and 62 South Main Street are then distributed to the various stores throughout the state, and he answered: "Approximately 80 percent." He was asked if he had any local warehouses in this vicinity [that is, Wilkes-Barre] and he answered, "No." He was asked: "Whatever redistribution you make you make from No. 62 South Main Street?" He answered: "Yes." He was asked: "When you have a surplus of stock but you have no room in the second floor of 62 and 64, they are put in 60?" He answered: "That is partially the reason."

Mr. Brown also testified that in 1928 he put up a pipe barrier against the alley facing the door of the Schneider building, at 60 South Main St. Mr. Brown did this with the consent of the then owner of the Schneider building. Mr. Brown also testified that the 10-foot alley was paved by himself and the owners of the lots that abutted on the alley on its west side, that he permitted Mr. Landau, the then owner of No. 60, to use the alley as an entrance to No. 60 and Mr. Landau understood that Mr. Brown would put up the barrier every once in a while for a day. Mr. Brown put up the barrier permanently in 1938 after Landau went out of the building. This barrier did not affect the premises at 62; it only prevented delivery of goods through the door at No. 60, No. 60 being athwart the alley. Mr. Brown testified that he had complained several times to Mr. Raub about blocking up the alley when he was unloading cartons. Percy A. Brown & Co. "cleaned the snow from the alley, swept it, and cleaned the whole place up." The barrier that Mr. Brown now has at the

northern end of the eastern side of the alley is simply to prevent Raub's trucks from turning eastward into the open space at the northern end of lots D and E belonging to the plaintiff. Mr. Brown said that he supervised the alley, "cleaned it, swept it, and shoveled the snow for fifteen years and no one ever thanked me, so I took some privileges I should have thereby keeping the bums out of the alley."

There was placed in evidence an agreement between Percy A. Brown & Co. and B. Teresa Schneider and husband, the former owners of the premises at No. 60. It was dated December 18, 1928, and in this agreement Mrs. Schneider and her husband acknowledged and declared that neither of them had any right in the 10-foot alley and that the only right they had was a verbal license granted by the owner thereof. This deed was recorded in Luzerne County. The court below made the following statement: "If the defendant, after having transported goods through the alley and unloaded them into No. 62 South Main Street, should, through an interior passageway or hall, remove them into a building located a half block distant, instead of to the adjoining premises, as is here done, could such conduct be restrained upon the contention that the building to which the goods were ultimately removed and stored was improperly made or treated by the defendant as appurtenant to the alley? We think not."

We do not agree with that statement. If, for example, the defendant Raub would convert his huge building at No. 60 South Main St. into a warehouse and, if he brought large quantities of goods up the alley and unloaded them at No. 62, and then stored them in the warehouse at No. 60, he would be unduly enlarging his rights in the alley as a tenant of No. 62. The court below in support of its position, cites the case of *Benner v. Junker,* 190 Pa. 423, 43 A. 72. That case is distinguishable from the case at bar. In that case plaintiff and defendant owned properties on Locust St., Philadelphia. When the houses were built an alley three feet wide was

left open between them. The division line ran in the center of the alley. The defendant's father converted his house into a bakery and shop for the sale of bread. Later the defendant bought a property in the rear of his Locust St. property and bread baked in that property was carried across into the Locust St. property 'Where it is assorted, placed in baskets and carried out through the alley, and then loaded in the delivery wagons." This court held that while "one occupant could not by the use of the alley so obstruct it as to prevent its reasonable use in view of the original purpose by the adjoining occupant" that this use by the defendant of the three-foot alley to convey bread to the delivery wagons after the bread had been assorted and packed in property No. 1 was not surcharging the alley. In other words, property No. 1 was not used as a mere conduit for bread from property No. 2 but something essential to the retail sale and distribution of the bread was done on property No. 1. That was a "close case" and since the alley in controversy was only three feet wide, there was no inconvenience caused the plaintiff by reason of any vehicular traffic on that alley. In the instant case, the defendant used the alley for large delivery trucks. As the tenant at 62, he has the right to use the alley with trucks but he does not have the right to use the alley for trucks *whose cargo is destined for No. 60;* and in no case can the defendant use the alley to such an extent as to prevent its like convenient use by others who also have an easement therein. The law is settled that those who have the same rights over an easement must exercise those rights fairly and reasonably so as not to interfere with the fair and reasonable exercise of the same rights by others who possess them.

19 Corpus Juris 979, section 227, states: "A right of way cannot be used . . . to pass to other land or premises adjacent to or beyond that to which the easement is appurtenant," citing, inter alia, *Webber v. Vogel,* 159

Pa. 235, 28 A. 226, where it was held that when A was given the right to transport over certain land coal mined from tract X it did not give him the right to transport over the same right of way coal mined from tract Y, both tracts being owned by him. The court said: ". . . the right of way was specifically restricted to the mining and to the hauling of the coal under such tract [i.e., tract X]." In *Coleman's Appeal,* 62 Pa. 252, it was held that a right of way cannot be used by the owner of the dominant tenement to land other than that to which it is appurtenant. See also *Schmoele v. Betz,* 212 Pa. 32, 61 A. 525. In *Hollenback v. Tiffany,* 50 Pa. Superior Ct. 297, it was held that: "A right of way along an alley appurtenant to a particular lot cannot lawfully be used as a mode of access to another lot to which it is not appurtenant."

That the plaintiff is entitled to an injunction restraining the defendant Raub from using the 10-foot alley to transport goods into No. 60 South Main St. by way of No. 62 is clear. As this court, speaking through Justice MITCHELL, said in *Allegheny Nat. Bank v. Reighard,* 204 Pa. 391, 397, 54 A. 268, "The legal injury which plaintiff is entiled to prevent is the permanent change in the conditions agreed upon as shown by the past user. In that case this court upheld the injunction decree of the court below and asserted that "plaintiff's right is to have the status quo maintained, independently of any actual present injury by the change." Since Raub's store on South Main St., Wilkes-Barre, is the "main headquarters" of his 10 Northeastern Pennsylvania stores and since 95 percent of the goods and merchandise he receives in his stores are delivered through the alley to No. 62, and since he admits he takes from 3 to 10 percent of the goods and merchandise delivered through the alley and via No. 62 into store No. *60,* it follows that if he is not restrained from continuing his admitted present trespass on the alley easement, this trespass is likely to be greatly increased.

Question 2 relates to the existence of a cross alley leading from the northern end of the 10-foot alley eastward over lots D and E. On this point the court found that "there is no satisfactory evidence that at the time of the conveyance from Espy, for the land now owned by the Weitzenkorn Estate, and occupied by the defendant Raub, a cross alley existed leading from the ten foot alley in the rear of the Sturdevant (or Perry) lot, now owned by the plaintiff." As this finding is based upon sufficiently competent proof, we will sustain it.

As to question 3, the court found as a fact that there was no satisfactory evidence that at the time of the conveyance from Executor Espy, for the land now owned by the Weitzenkorn Estate, a "cross alley" existed leading from said 10-foot alley in the rear of the Sturdevant (or Perry) lot, now owned by the plaintiff. There is no proof that Jennie Weitzenkorn used or attempted to use a strip of land extending from the alleged "cross alley" along the westerly side of the Perry lot. These findings are supported by competent proof and this court therefore accepts them.

Defendants base their claim to the right of way over the "vacant" rear of plaintiff's lots D and E on that provision in all the Espy deeds which granted to the grantees "the right of way over said alley and any opening therein and leading thereto upon the real estate of said Eliza Perry and Mary A. Perry."

The words "any opening therein and leading thereto" give rise to the problem presented in question 3. The defendants argue that since all of the rear[4] of lots D and E was *not occupied* by buildings, this rear constitutes "an opening" "leading" to the 10-foot alley and, therefore, the owners or tenants of lots A, B, and C possess a

---

[4] This rear area was at the time when Mr. Brown bought lots D and E partially occupied by a dilapidated stable. This area is now about 60 feet square. It was years ago paved by the plaintiff and is in daily use by the plaintiff in vehicular and other activities incident to plaintiff's large and active business.

perpetual easement in that "opening." We must apply to these six words the applicable canons used in the interpretation of contracts. "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles."; 6 R. C. L. 835, section 225, (Citing, inter alia, *Roberts v. Beatty,* 2 Pen. & W. (Pa.) 63, 21 Am. Dec. 410). "Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. (Citing cases). Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. If one construction would make it unreasonable, while another would do justice to both parties, the latter will be adopted.": 6 R. C. L. 841, section 230, (Citing cases). "Where the language of a contract is ambiguous or susceptible of several significations, conjectures are necessarily resorted to to determine the meaning of the parties; and for this purpose conjectures may be drawn from the subject-matter, and from the circumstances of the contract": Ibid, section 231. In the deed of B. M. Espy, Executor, to the six Perry lots, the grantor's intention that the 10-foot alley should be kept open for the use of all the owners and lawful occupants of the "Perry lots" as long as those lots abutted on that alley *or* abutted on any "opening" on that alley or on any "opening leading thereto" is obvious.

The only reasonable interpretation is that the grantor contemplated that not only would the owners of lots A, B, C, and D, *bordering* on the alley, have a right of way

over that 10-foot alley *but also* the owners of lots E and F would also have a right of way over that alley *if* the owner of lot D would grant to the owner of lot E an "opening" to that alley and if the owner of lot E would share that opening with the owner of lot F and also give the latter owner an easement over lot E. In fact, the then owner of lots D and E did that very thing when by his deed dated August 17, 1921, supra, he conveyed to Percy A. Brown, who had on that day acquired lot E, "a strip of land 20 feet across . . . the rear end of premises Nos. 14 and 16 East Northampton St." [i.e., lot D]. It would be as absurd to hold that the owners of lots A, B, and C have perpetual access to and use of any part of lot D which was unoccupied by a building on the theory that this lack of occupancy constituted an "opening leading" to the alley, as it would be to hold that the owner of lot D had perpetual access to any part of lots A, B, and C which might be so unoccupied for the time being as to leave "an opening" to the alley. The executor-grantor of the Perry lots, manifestly wished to grant to the owner of *every one* of those lots the use of the 10-foot alley *if* the owner's lot *either* bordered on the alley *or* if the owner acquired an "opening" to the alley. For example, if the owners of lots A, B, and C sold the rear portions of those lots to others but retained for themselves as owners of the front portions an "opening" to the alley, they would be entitled under their grants to have the use of that alley for the reasons that they not only owned a portion of the Perry lots but that they also were the lawful owners or occupants of an "opening leading" to that alley.

As to Raub's rights to use a vacant space (which defendants called an alley) from the alleged cross alley or vacant space in the rear of lots D and E to East Northampton St., the court found no basis whatever for the claim. This space on Northampton St., now about 28 feet in width, on which plaintiff permits its customers

to park their cars, is simply an open space between two properties owned by the plaintiff on Northampton St. Periodically, for several years plaintiff has closed the space to all vehicles and to all non-employees of the plaintiff for certain periods of time so that the use of the space will not ripen into an easement.

As to the fourth question, it is clear from what we already said in respect to question 3 that plaintiff as owner of lots E and F had a right to use the 10-foot alley for purposes incidental to the business he conducts on properties erected on those lots because he acquired in 1921 a 20-foot right of way through lot E, across lot D to the 10-foot alley and in 1927 he acquired lot D. Therefore, the plaintiff acquired the right he claimed and now claims in respect to lots D and E by grant. His ownership of lots D, E, and F gives him an easement in the alley in respect to each of those lots. D borders on the alley and E and F have "openings" leading across D to the alley.

As to the fifth question, the court made the following findings of fact: "In order to facilitate the use of the alley, in connection with these properties, the plaintiff's predecessor in business, about 1921, erected a loading platform, partly on the Burgunder lot and partly on the Perry lot. This was visible and apparent to the owners of 62, 62½ and 64 South Main St.

"This use of the alley to transport food and supplies to and from said platform was visible, open and hostile. No objection or protest of any kind to such course of conduct was made by the defendants, or any one else, nor was such right questioned until the filing of the answers setting up New Matter."

These findings are based on competent proof and we sustain them. But defendants in their brief of arguments say: "The plaintiff bases his right upon an adverse user of the alley for twenty-one years. The user, if he used the alleys, was in conjunction with the user by all

the parties having the right to use the alleys as appurtenant to their purchases, and was in no sense adverse. His use of the alley for that purpose was certainly not adverse. It lacked the element of adverse user, was not distinct or exclusive, but only concurrent and not hostile."

This argument is based on an erroneous conception of the meaning of the term "exclusive" as used in statements relating to the acquisition of an easement by prescription. It is pointed out in 19 Corpus Juris 892, section 59: "The term 'exclusive', however, does not mean that the easement must be used by one person only, but simply that the right shall not depend for its enjoyment upon a similar right in others; it must be exclusive as against the community at large. The use may be exclusive in the required sense even though it is participated in by the owner of the servient tenement, or by the owners of adjoining land. And the fact that certain persons have acquired an easement by grant or custom does not prevent other persons from acquiring title to the same easement by prescription."

In *Bigelow Carpet Co. v. Wiggin et al.,* 95 N. E. 938, 209 Mass. 542, the Supreme Judicial Court of Massachusetts, said: "A right of way may exist over the same place in favor of different persons holding by diverse titles. If some of them enjoy it by grant or custom, this does not prevent others from acquiring a prescriptive right [therein], even if the use may be the same in character."

In *McKinzie v. Elliott,* 134 Ill. 156, 24 N. E. 965, the Supreme Court of Illinois held that the fact that an alley was also used by the owners of other adjoining land does not prevent the acquisition by others of a prescriptive right in the same land. Washburn on Easements, 4th Ed., p. 164, section 44; Id. pp. 165, 166, section 46; 28 C. J. S. 659; 17 Am. Juris. 976; 1 A. L. R. 1365; and *Thompson v. Bowes,* 115 Me. 6, support the proposition

that the use of a right of way may be exclusive so as to create an easement by prescription even though it is participated in by other persons.

The above rule is based on sound reasoning and appears to be of universal application. We have found no Pennsylvania case to the contrary. The case of *Zerbey v. Allan*, 215 Pa. 383, 64 A. 587, cited by defendants, does *not* hold that one individual cannot gain by prescription any rights in an easement which is owned by one or more other individuals. What it does hold is that where a user is with knowledge and acquiescence of the owner of the land traversed, and is under his leave, favor and permission, and at his will, no title by prescription can arise. The other cases cited by the appellants, including *Mitchell v. Bovard et al.*, 279 Pa. 50; *Fidler v. Rehmeyer*, 34 Pa. Superior Ct. 275, relate to the distinction between a hostile user and a permissive user, of a right of way.

Defendants' contention that plaintiff has "come into court with unclean hands" by reason of the two barriers it placed across the alley, is without merit and requires but little discussion. The twentieth and twenty-first findings of fact of the court below read as follows: "20. Plaintiff, with the consent and approval of all the co-owners of the ten foot alley, constructed a chain and rod [20 feet from the street] attached to his building for the purpose of preventing the unlawful use of the ten foot alley by strangers thereto. Plaintiff's counsel has asserted that the plaintiff is willing to remove this chain, if others, entitled to the use of the alley, object to its continuance."

"21. In 1928, the plaintiff, with the consent and approval of the co-owners of the ten foot alley, erected an iron barrier at a point in the rear of 62 South Main Street, across the end of the ten foot alley." (This was 4 inches south of a line which would be a projection of the line between No. 60 and No. 62).

Percy A. Brown testified that: "Around, probably but the lock wasn't locked . . . We put this chain up to 1937, we put a chain across the alley with a lock onto it, keep the crowds out, but also as a matter of a safety factor." (This "safety factor" had relation to "a robbery on Main St.") Mr. Brown described the chain at the end of the alley as a "barrier against the door of the Schneider building", meaning thereby the door on the south side of the property on 60 South Main St., which door opened into the end of the 10-foot alley. He said that he put up the barrier on the end of the alley "to protect our rights" but that he permitted Mr. Landau, the then occupant of No. 60 South Main St., to use the alley by permission from 1927 to 1937. At the latter date, Landau vacated the premises at 60 South Main St. As to the other owners of the easement in the alley, Mr. Brown stated: ". . . they were satisfied, as far as they were concerned. Mr. Weitzenkorn (the "Weitzenkorn Estate" owns lots C and CC) said he would be glad to have me look after his interests, and practically thanked me." Mr. Brown's placing an unlocked chain in the alley twenty feet from East Northampton St. was, as he stated, for the purpose of keeping trespassers out of the alley, especially at night. As Mr. Brown pointed out, the alley was sometimes used for unlawful purposes.

Defendants' complaint that the plaintiff "has permitted its customers doing business with it in its places of business on the Burgunder lot to drive their cars from Northampton St. through lot F and through the rear of lots F and E and into and through the ten-foot alley leading to Northampton St." is devoid of merit. The plaintiff is the sole and exclusive owner of lots F and E and its customers can use these lots for any purpose permitted by the plaintiff. Plaintiff's customers also have the right to use the 10-foot alley for the purpose of ingress and egress to plaintiff's places of business on lots F and E and on the Burgunder lot. "The owner of a way is not limited to its use by himself, but it may be

used by his family; by tenants occupying the land with his authority; by his servants, agents or employees in conducting his business; by persons transacting business with him; or by guests for social purposes; except in cases where the right of way is created by express agreement and the user is restricted by the terms of the agreement. Where a way is appurtenant to an estate it may be used by those who own or lawfully occupy any part thereof, and by all persons lawfully going to or from such premises, whether they are mentioned in the grant or not." (citing numerous cases): 19 C. J. 977, section 224. In *Com. v. Burford*, 225 Pa. 93, 73 A. 1064, this court held that a right of way appurtenant to a house includes not only the right of the lessee to the use of it, but also the right to its use by any other person who with the permission of the tenant visits the house for any lawful purpose.

In adjudicating the rights of various individuals to an easement there are certain principles to be applied: "A fundamental principle is that an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts, to which the right is not attached. In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication." (Citing numerous cases): 9 R. C. L. 786, section 43. "The use of an easement must be confined strictly to the purposes for which it was granted or reserved": 9 R. C. L. 787, section 44. "The right of the easement owner [or easement owners] and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited,

each by the other, that there may be due a reasonable enjoyment of both . . . nothing passes as an incident to the grant of an easement except what is requisite to its fair enjoyment . . . if an easement is used for any purpose inconsistent with that for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use. No definite rule can be stated as to what may be considered a proper and reasonable use as distinguished from an unreasonable and improper use. The question is usually left to the jury or the trial court as one of fact.": 17 Am. Jur. 993, 994, 995, section 96. In *Ellis v. The Academy of Music*, 120 Pa. 608, 15 A. 494, this court, is an opinon by Chief Justice GORDON, said in respect to a controversy as to the use of an easement: "no man may trespass upon another's right however insignificant that right may be. . . . The right . . . was common to both parties, so that neither, without the assent of the other, had the right to alter the character of the alley in any particular." The court held when by several grants to the parties, their properties are bounded by a private alley in controversy and the same use of the alley is made appurtenant to each property, neither party has the right to alter the character of the alley in any particular without the assent of the other.

Those who have an easement in this 10-foot alley acquired either by grant of the Perry lots, or by prescription (as the owner of the Bungunder lot[5] acquired its right *as such owner* in the alley) must each use his or its easement in such a fair and reasonable manner as not to interfere with the fair and reasonable use of the same easement by others equally entitled. Apparently, this narrow alley was not originally intended for the use of huge trucks and while such trucks cannot be excluded from the alley providing they serve the interest of those

---

[5] This owner, the plaintiff, as owner *also* of lots D, E, and F, acquired by grant an easement in the alley, as hereinbefore pointed out.

possessing an easement in the alley, they cannot be permitted to block the alley for unreasonable periods of time. The principle of "live and let live" must control the use of the alley by those in possession of property to which the alley easement is appurtenant.

The plaintiff is entitled to an injunction restraining Raub from usng the 10-foot alley *as appurtenant to the building situated at 60 South Main St.,* Wilkes-Barre. To the extent that he uses the premises at 62 South Main St. as a channel for the transfer of goods from the alley to the building at *60* South Main Street, he is a trespasser in the alley and his trespasses must be restrained.

The decree of the court below dismissing plaintiff's bill is reversed. It is ordered that the bill be reinstated and a decree be entered restraining Raub from taking goods through the 10-foot alley for either immediate or ultimate placement in premises No. 60 South Main St., Wilkes-Barre. No barriers shall be erected across the 10-foot alley except by consent of all those who possess easements in that alley. The action of the court below in refusing to grant defendants' prayer for an injunction "restraining the plaintiff, its agents and employees, and customers from using the 10-foot alley, the cross alley and the 15-foot alley for purposes" incident to plaintiff's business, and the action of the court in denying the defendants a "mandatory order to remove the concrete block structure built and erected on the 15-foot alley extending along the westerly side of the Perry lot now owned by the plaintiff in a southerly direction to East Northampton Street," as to which alleged 15-foot alley defendants claimed a right of user by prescription and as to which claim the court's finding was adverse, are affirmed. The court below is directed to retain the bill so that if at any time either party makes any unfair and unreasonable use of the alley to the prejudice of the other's rights therein, appropriate restraint may be judicially imposed upon the wrongdoer. The parties will pay their respective costs.