## Southwest Delaware County Municipal Authority v. Middletown Township Sewer Authority

*James P. Gannon,* for plaintiff.
*Robert B. Surrick,* for defendant.

BROWN, *J.*, *Specially Presiding*, October 24, 1980—The parties in this action, on January 10, 1968, executed a written agreement by which plaintiff agreed to accept sewage from defendant in consideration of the payment of certain fees for the treatment of such sewage. According to the agreement, defendant agreed, inter alia, to make additional payments to plaintiff in the event that plaintiff would determine that additional capacity for the conveyance of sewage from defendant would be necessary in the Chester Creek Interceptor. The paragraphs describing such additional payments and the manner of their calculation are paragraphs 6 and 7 of the agreement.

On or about January, 1977, plaintiff determined that it was necessary to expand the capacity of the Chester Creek Interceptor.

• • •

The parties in this litigation disagree as to the share of Middletown Township in the Cost Improvement. If the calculations required under paragraphs 6 and 7 of the agreement take into account only the Equivalent Dwelling Unit's being serviced by the Chester Creek Interceptor, then the share of Middletown Township, Delaware County, Sewer Authority amounts to 43.88 percent of capital costs. However, if the calculations required under paragraphs 6 and 7 of the agreement take into account the entire number of EDU's being treated at the Treatment Plant, then the share of Middletown Township, Delaware County, Sewer Authority amounts to 18.5 percent.

This matter is presently before the court on cross-motions for summary judgment.

• • •

In order to fully understand the dispute, it is necessary to review paragraphs 6 and 7 of the agreement, which are the points of contention. The pertinent parts of the sections read as follows:

"Section 6. Additional Payments on Account of [Sewage Treatment] Plant Expansion. If Southwest Authority shall expand the plant (herein referred to as "plant expansion"),

• • •

(A) Middletown Authority shall contribute a part of the total actual cost of the projected plant expansion, in the proportion that, as of the end of the immediately proceeding semi-annual period, the total of the EDU's [ ] of Middletown Authority being treated at the Treatment Plant bears to the total of the EDU's being treated at said plant from all sources including Middletown Township, provided that under this alternative (A) the maximum semi-annual charge per EDU shall not exceed $14.925 . . .

Or (B), Middletown Authority shall obligate itself to pay to Southwest Authority increases in the semi-annual charge per EDU by amounts to be determined at the end of each subsequent semi-annual period, equivalent to Middletown Authority's proportionate share of the additional sum paid or set aside for payment per EDU by Southwest Authority during such semi-annual period on account of principal and interest on any additional sewer revenue bonds (including any refunding bonds) or other debt securities over their lives to the extent issued by Southwest Authority to finance the cost of the plant expansion, such share of Middletown Authority to be in the proportion that, as of the end of the semi-annual period, the total of the EDU's of Middletown Authority being treated at

the Treatment Plant bears to the total of the EDU's being treated at said plant from all sources including Middletown Township . . .

Section 7. Additional payments on account of need for additional capacity in Chester Creek Interceptor. In the event that the Southwest Authority shall determine that the Chester Creek Interceptor has reached total capacity, . . . and Southwest Authority determines to increase said capacity by increasing the size of said interceptor, or any part thereof, or substitute or relocate a larger interceptor or part thereof, Middletown Authority shall contribute a proportionate part of the cost of increasing said capacity under the same methods and terms provided in Section 6(A) and (B) hereof, except that in determining the proportionate share of the capital contribution under (A), or increase in semi-annual payments under (B) to be made by the Middletown Authority, the first 1300 EDU's from Middletown Authority, whether theretofore connected to Southwest Authority system or not, shall be exempted or excluded from such computation. For this purpose, only the EDU's of Middletown Authority above and over 1300 shall be used in determining the respective shares of the parties under (A) and (B) above for expanding the size of the Chester Creek Interceptor."

In order to further assist the court, the parties have stipulated that the meaning of the words "1300 EDU credit" in section 7 of the Sewage Treatment Agreement means that the numerator of the fraction to be reached to determine the extent of the contribution by the Middletown Township, Delaware County, Sewer Authority to the Southwest Delaware County Municipal Authority on account of the need for additional capacity in the Chester Creek Interceptor shall be the number of

users from Middletown Township in the system which the parties have agreed to be 3102 less a credit of 1300 thereby making the numerator 1802.

• • •

Where a contract is clear and unambiguous, the intent of the parties should be determined solely from the expressed language of the agreement: Percy A. Brown and Co. v. Raub, 357 Pa. 271, 54 A. 2d 35 (1947). In a case such as the present one before this court, the parties have the right to make their own contract and it is not the function of the court to rewrite it or to give it a construction which is in conflict with the accepted and plain meaning of the language: Bobali Corp. v. Tamapa Co., 235 Pa. Superior Ct. 1, 340 A. 2d 485 (1975).

In January of 1977, plaintiff determined that it was necessary to expand the capacity of the Chester Creek Interceptor. According to Section 7 of the agreement, defendant was to contribute to the capital cost "a proportionate part of the cost of increasing said capacity under the same methods and terms provided in Section 6(A) and (B) hereof . . ."

Section 7 is concerned with the expansion of the Chester Creek Interceptor. However, according to Section 7, defendant is to contribute a proportionate part of the cost of expansion under the same methods and terms provided for in Section 6(A) and (B), notwithstanding the fact that Section 6 is concerned with the expansion of plaintiff's treatment plant. In interpreting the agreement, Section 6 must be referred to to ascertain the method to be used in calculating defendant's proportionate share of the costs as well as the terms to be used in calculating defendant's proportionate share of the costs.

Section 6(A) and (B) provides that a fraction must

be set up in order to determine the proportionate share of defendant. This fraction consists of a numerator including the total number of Middletown's EDU's treated at the treatment plant and the denominator consists of the total number of all EDU's treated at the treatment plant.

When numbers are inserted into this formula, the fraction becomes 3102.208/9700.

The numerator of the fraction, 3102.208, equals the total number of defendant's EDU's treated at plaintiff's treatment plant. The denominator of the fraction, 9700, is the total number of EDU's including defendants, being treated at the treatment plant.

The language of Section 7 compels the continued use of the term "treatment plant." Plaintiff suggests that a different denominator should be placed into the fraction, however, this would result in the use of a term which is not provided for in Section 6. According to plaintiff, the denominator of the fraction should be the total number of EDU's of all customers of plaintiff using the Chester Creek Interceptor. The fraction, according to plaintiff, would require the numerator to be the total number of Middletown's EDU's and the denominator to be the total number of all EDU's treated at the Chester Creek Interceptor. Using plaintiff's formula and inserting the figures, the fraction would be as follows—3102.208/4106.738.

Such a result is not consistent with the terms of the agreement.

In order to complete the fraction in Section 7 for the purpose of determining defendant's proportionate share of the cost of the interceptor, the exception contained in Section 7 must be inserted into the fraction. According to Section 7, defendant is given a credit for 1300 EDU's. Accordingly, the

fraction now reads 3102.208 minus 1300/9700.

When this fraction is converted to a percentage, the figure obtained is 18.5 percent. This represents the figure which defendant owes as its proportionate share of the cost of expanding the Chester Creek Interceptor and the expressed language of the agreement clearly supports this conclusion.

There is no dispute that Section 6 involves expansion of the capacity of the treatment plant and that Section 7 involves expansion of the capacity of the Chester Creek Interceptor. However, this does not mean that two different results were intended, with respect to the proportionate share of the cost of expansion of each which defendant must pay. There is no question but that plaintiff is to pay a share of the cost of increasing the capacity of the interceptor. In order to determine what that share is however, it is necessary to use the same methods and terms as set forth in Section 6.

• • •

Only when there is a choice of construction and strict constrution would work an injustice is a contract construed according to its spirit, and not by its literal means: Unit Vending Corp. v. Lacas, 410 Pa 614, 190 A. 2d 298 (1963). There is no choice of construction in this case. The contract is plain and unambiguous and must be interpreted according to its expressed terms.

• • •

In light of the foregoing, this court is of the opinion that plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment must be sustained. Accordingly, this court enters the following

## ORDER

And now, October 24, 1980, upon consideration of the briefs and arguments presented by respective counsel before this court, it is hereby ordered and decreed that:

1. The motion for summary judgment filed by plaintiff in the above matter be and the same is hereby denied and dismissed;

2. The motion for summary judgment filed by defendant in the above matter be and the same is hereby sustained;

3. Plaintiff's complaint in assumpsit against defendant be and the same is hereby dismissed and judgment is entered in favor of defendant.