Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Bracken Construction Company, Respondent.

Argued February 2, 1983, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*George D. Wenick,* Assistant Counsel, with him, *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for petitioner.

*Charles R. Alexander, Alexander, Garbarino, Kooman & Kifer,* for respondent.

OPINION BY JUDGE CRAIG, March 15, 1983:

The Pennsylvania Department of Transportation (DOT) appeals from an order of the Board of Claims awarding Bracken Construction Company (Bracken) $28,600.00 in a contract dispute.

In 1972, after a competitive bidding process, DOT and Bracken entered into a contract for the construction of a section of Interstate 79 in Allegheny County. The project plans included several small highway bridges and specified that slabs of reinforced concrete, known as bridge approach slabs, would provide the transition from the roadway to the bridge decks. DOT had supplied the bidders with project drawings, sheets of item summaries, and DOT contract form number 408. The bids contained unit prices; for example, Bracken bid $.22 per pound for steel reinforcement bars. When DOT awarded Bracken the contract, the schedule of prices in Bracken's bid became the contract prices.

Bracken completed the project, and there is no dispute that Bracken performed the work according to the specifications. Disagreement arose when DOT refused to pay Bracken's claim for the cost of the steel reinforcement bars (rebars) which Bracken had placed in the approach slabs. Before the board, Bracken argued that DOT should pay for the rebars by the pound at the unit price bid; DOT contended that the cost of the rebars was included in the price it had paid Bracken for the approach slabs ($35 per square yard).

After a hearing, the board found that the section of the contract concerning payment for the approach slabs was ambiguous, that Bracken did not err in calculating its approach slabs bid exclusive of rebars, and that Bracken reasonably believed DOT would pay for

the rebars by the pound. The board, therefore, concluded that DOT should pay Bracken $28,600.00, the cost of the approach slab rebars at the contract price of $.22 per pound.

DOT argues here that the contract clearly required the cost of the rebars to be included in the cost of the approach slabs, for which DOT has paid Bracken the contract price. DOT contends, in the alternative, that the contract was so glaringly ambiguous that Bracken had a duty to request clarification before submitting its bid; because Bracken failed to do that, DOT argues, it cannot recover the cost of the rebars.

Following our scope of review for this type of case,[1] we must reject DOT's positions and affirm the order of the board.

"The function of contract interpretation and construction is a question of law peculiarly within the province of the court."[2] We must first look to the documents themselves, and we must give contracts "a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language."[3]

---

[1] "Our scope of review here is limited to determining whether or not the Board's order is in accordance with law and whether or not the findings of fact are supported by the evidence." *Argeros and Co. v. Department of Transportation*, 67 Pa. Commonwealth Ct. 531, 533, 447 A.2d 1065, 1067 (1982) ; *Department of Transportation v. Brayman Construction Co.*, 33 Pa. Commonwealth Ct. 485, 382 A. 2d 767 (1978).

[2] *National Products Co. v. Atlas Financial Corp.*, 238 Pa. Superior Ct. 152, 158, 364 A.2d 730, 733 (1975) ; *Filler Products, Inc. v. Corriere*, 381 Pa. 394, 113 A.2d 219 (1955). Cf: *Barcelona v. Fox Grocery Co. Employee Pension Plan*, 483 F. Supp. 1128 (W.D. Pa. 1980) and *Castellucci v. Columbia Gas of Pennsylvania, Inc.*, 226 Pa. Superior Ct. 288, 310 A.2d 331 (1973) where disputes over the underlying facts created questions for the trier of fact.

[3] *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 287, 54 A.2d 35, 43 (1947).

A contract is ambiguous if it is reasonably susceptible of different constructions, is obscure in meaning through indefiniteness of expression or has a double meaning.[4] We "may consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question."[5]

The principal source of disagreement is the section of the contract providing for payment for the approach slabs. DOT included this section in Form 408 which became a part of the contract:

> Section 666.5 BASIS OF PAYMENT—
> Bridge Approach Slabs will be paid for at the contract unit price per square yard, complete in place as specified, which will include the premolded expansion joint filler, joint backing material, joint sealing material, and closed cell neoprene sponge, when specified, at the joint adjacent to the bridge superstructure.

Apart from that Section 666.5, the tabular schedule of prices in the contract included nine entries specifying a price for rebars separately. Eight of those contained a lump sum figure representing the price of all of the rebars at a specific, identified project site. The ninth of those entries priced rebars at $.22 per pound for an approximate quantity of 2,841,000 pounds without specification as to site.

The board concluded, and we agree, that the contract is ambiguous. Two reasonable people reading this contract could fairly and reasonably arrive at different conclusions about how DOT would pay for the

[4] *State Highway and Bridge Authority and Department of Transportation v. E. J. Albrecht, Co.*, 59 Pa. Commonwealth Ct. 246, 430 A.2d 328 (1981).

[5] *Calley v. Mutual Benefit Health and Accident Association*, 229 Pa. Superior Ct. 475, 482, 324 A.2d 430, 434 (1974) quoting *Mazzilli v. Accident & Casualty Insurance Co. of Winterhur, Switzerland*, 35 N.J. 1, 170 A.2d 800 (1961).

approach slab rebars. Section 666.5 does not expressly mention the approach slab rebars, and neither do the nine entries in the tabular schedule of prices. The summary sheets for the project allocate each of the rebars listed in those nine sections to sites other than the approach slabs. If DOT had specifically included the approach slab rebars in Section 666.5, or had listed them on the summary sheets as part of one of the nine rebar items, there would have been no ambiguity.

The intent of the parties must control our interpretation, and where, as here, that intent is not clear from the words of the contract, we may examine extrinsic evidence. We may also consider the subject matter of the contract, the circumstances surrounding its execution, and the subsequent acts of the parties.[6]

In 1972, Bracken had ten years of experience as a contractor with DOT,[7] and until that year Section 666.5 read as follows:

Section 666.5 BASIS OF PAYMENT—Bridge Approach Slabs will be paid for as follows:

(a) Reinforced Cement Concrete will be paid for at the contract unit price per cubic yard, completed in place, as specified.

(b) Reinforcement Bars will be paid for at the contract unit price per pound as specified in Section 1002.5.

DOT contends that the change in this section was sufficient to put Bracken on notice that DOT would

---

[6] *Redevelopment Authority of the City of Johnstown v. Tross*, 20 Pa. Commonwealth Ct. 103, 340 A.2d 652 (1975). *Castellucci v. Columbia Gas of Pennsylvania, Inc.*, 226 Pa. Superior Ct. 288, 310 A.2d 331 (1973); *Cirotti v. Wassell*, 163 Pa. Superior Ct. 292, 60 A.2d 339, (1948).

[7] In interpreting an ambiguity, the court may properly consider the course of prior dealings between the parties. *Windsor Manufacturing Co. v. S. Markransky & Sons*, 322 Pa. 466, 186 A. 84 (1936).

pay for the approach slabs as a unit, including the cost of the rebars. The fact that approach slabs were not among the nine entries specifically referring to payment for rebars, DOT argues, made the change even more apparent.

In 1973, after this contract was signed, DOT again changed the section providing for payment of the approach slabs. The subsequent version read as follows:

> 505.5 BASIS OF PAYMENT—Bridge Approach Slabs will be paid for at the contract unit price per square yard, complete in place as specified, which price will include the premolded expansion joint filler, joint backing material, joint sealing material, and closed cell neoprene sponge when specified, at the joint adjacent to the bridge super structure, and all reinforcement.

Bracken argues that the addition of the words "and all reinforcement" supports its contention that the 1972 version of the section did not include the rebars.

The relevant circumstances also included, as Bracken's president testified, Bracken's experience with precisely the same problem in an earlier contract with DOT. Laverne Bracken testified that DOT had, in the earlier contract, omitted the approach slabs rebars from the summary sheets, but nevertheless had paid for them by the pound at the contract price. Although Bracken knew that the approach slab rebars were not in the summary sheets when it compiled its bid on this project, it also knew that DOT had always paid for omitted items in the past.

We are unable, from these circumstances, to discern any shared intent in this case. Bracken read the contract as continuing the earlier practice of payment on a per pound basis, while DOT intended to include pay-

ment for the rebars in the payment for the approach slabs.

When the examination of the surrounding circumstances fails to clarify the intent of the parties, the court may employ the various rules of contract construction[8] to determine the legal effect of the language in the contract.

The maxim expressio unius est exclusio alterius provides that the mention of certain items implies the purposeful exclusion of other items of the same general character.[9] DOT argues that this principle is not applicable here because the items listed in section 666.-5 were not of the same class as the rebars, and, therefore, the omission of the rebars does not imply their intentional exclusion. From this provision, DOT argues, Bracken should have been aware of DOT's intent to include the rebars in the price of the approach slabs.

We cannot agree with DOT's contention. Each of the specified items was a component part of the approach slabs. The section mentioned these in explicit detail, but limited its scope to the peripheral joints. The provisions did not include any components of the interior of the structure. In drafting this section, DOT could have easily listed every component that it intended to include in the unit price for approach slabs.[10]

DOT also contends that Bracken is not entitled to the benefit of the rule of construction requiring the

---

[8] *Burns Manufacturing Co. v. Boehm*, 467 Pa. 307, 356 A.2d 763 (1976).

[9] *Checker Oil Co. of Delaware v. Harry H. Hogg, Inc.*, 251 Pa. Superior Ct. 351, 380 A.2d 815 (1977). *See also Fazio v. Pittsburgh Railways Co.*, 321 Pa. 7, 182 A. 696 (1936) for an application of the doctrine in statutory construction.

[10] This is the precise change DOT made in this provision through the 1973 amendment.

resolution of an ambiguity against the one who drafted the contract.[11]

The courts have created an exception to that general rule when a government construction contract contains an obvious, glaring ambiguity. In such a case the private contractor is under a duty to inquire and to try to resolve the problem before entering into the contract. Failure to make such an inquiry prevents the contractor from complaining of the ambiguity after the contract is signed and problems arise.[12]

The type of ambiguity which will create this duty is "not subtle, hidden or minor, but patent, blatant and significant."[13] The ambiguity here became apparent only upon close scrutiny of the figures in the summary sheets (which admittedly were only estimates), the nine provisions specifically allowing payment for rebars, and the section providing for payment for the approach slabs. Although Bracken was aware of the omission of express reference to approach slab rebars when it submitted its bid, the cost of those rebars represented only about one-eighth of one percent of the total contract price. Bracken presented uncontradicted testimony that in a job of this magnitude the custom in the industry was not to raise such a minor difficulty at the prebid conference.

After considering these circumstances, we conclude that this is not a proper case of or the imposition of a duty to inquire. The ambiguity in this contract was

[11] *Hafer v. Schauer*, 429 Pa. 289, 239 A.2d 785 (1968); *Consolidated Tile and Slate Co. v. Fox*, 410 Pa. 336, 189 A.2d 228 (1963); *Department of Transportation v. Brayman Construction Co.*, 33 Pa. Commonwealth Ct. 485, 382 A.2d 767 (1978).

[12] *Department of Transportation v. Paoli Construction Co.*, 35 Pa. Commonwealth Ct. 390, 386 A.2d 173 (1978); *Department of Transportation v. Brayman Construction Co.*, 33 Pa. Commonwealth Ct. 485, 382 A.2d 767 (1978).

[13] *S.O.G. of Arkansas v. The United States*, 546 F.2d 367, 369 (Ct. Cl. 1976).

628

not blatant and glaring; it was minor and subtle. We, therefore, construe the ambiguity against the author of the contract, DOT, and affirm the board's order that DOT pay Bracken at the contract price of $.22 per pound for the rebars used in the approach slabs.

ORDER

Now, March 15, 1983, the order of the Board of Claims, dated October 9, 1981, is affirmed.