68

506 A.2d 990

In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 48032, Claim No. 4802934. David Oxford, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued February 3, 1986, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Donald H. Lipson,* for appellant.

*William J. Cressler,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellee.

OPINION BY SENIOR JUDGE BARBIERI, March 20, 1986:

This is an eminent domain case wherein the Petitioner, David Oxford, has appealed an order of the Court of Common Pleas of Northampton County. That order sustained the preliminary objections of the Pennsylvania Department of Transportation (PennDOT) and dismissed his petition for appointment of a board of view.

The record presents the following facts which we deem pertinent to our disposition of this appeal. Oxford is the owner of approximately two hundred acres of farmland located in Upper Mount Bethel Township, Northampton County. Certain portions of that tract abut and are located along Legislative Route 48032

which is a state highway maintained by PennDOT. On or about August 10, 1979, a PennDOT maintenance crew entered Oxford's land for the purpose of maintaining drainage ditches and channels for that state highway. PennDOT's entry upon Oxford's land is expressly permitted by Section 417 of the State Highway Law[1] which authorizes PennDOT to enter upon *any lands or enclosures* to maintain drainage ditches and systems which are necessary to carry water from the roads or highways. Oxford alleged that PennDOT's maintenance work on the drainage ditches substantially altered the flow of water from the highway which caused flooding of approximately six acres of his farmland rendering them useless for farming. In 1980 he filed a petition for appointment of a board of view seeking damages under the Eminent Domain Code[2] and Section 417 of the State Highway Law.[3] PennDOT filed preliminary objections to the petition which were dismissed by the common pleas court on February 25, 1981. PennDOT took an appeal to this Court and on June 11, 1984, in an opinion by Judge BARRY, this Court reversed the common pleas court's dismissal of PennDOT's preliminary objections and remanded the matter to that court for an evidentiary hearing on the issue of whether a

---

[1] Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. §670-417.

[2] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§1-101 - 1-902.

[3] This section provides that any damages sustained by the owner as a result of PennDOT's entry onto the land shall be paid in the same manner as provided by the State Highway Act pertaining to the construction of state highways. In 1979 the General Assembly repealed Sections 301 through 308 of the State Highway Law, 36 P.S. §§670-301 - 670-308, and provided no substitute procedure. *See* Act of December 7, 1979, P.L. 478, No. 100 (Act 100). Accordingly, entitlement and determination of damages under Section 417 is now governed exclusively by the Eminent Domain Code.

compensable injury has been suffered. *Department of Transportation Appeal,* 83 Pa. Commonwealth Ct. 184, 476 A.2d 519 (1984). Pursuant to our remand, the common pleas court held an evidentiary hearing on PennDOT's preliminary objections. On February 1, 1985, the common pleas court found that no compensable injury had occurred, sustained PennDOT's preliminary objections, and dismissed Oxford's petition for appointment of a board of view.

In this appeal, Oxford raises two contentions which are: (1) that he is entitled to damages under Section 417 of the State Highway Law; and (2) in the alternative, PennDOT's maintenance activities amount to a de facto taking of his property for which he is entitled to just compensation. We shall address those issues in the order stated. Our scope of review, where the common pleas court has sustained preliminary objections to a petition for appointment of a board of view, is limited to a determination as to whether or not the common pleas court's findings are supported by competent evidence or an error of law committed. *Miller Appeal,* 55 Pa. Commonwealth Ct. 612, 423 A.2d 1354 (1980).

In his inital contention for damages under Section 417 of the State Highway Law, Oxford concedes that Act 100 repealed the procedural portion of Section 417 and that the exclusive procedure for establishing a compensable injury and determining compensation lies within the Eminent Domain Code. *See Department of Transportation Appeal,* 83 Pa. Commonwealth Ct. at 186, 476 A.2d at 520. He argues, that the substantive provisions of Section 417, which allow a landowner compensation for damages inflicted upon his land as a result of PennDOT's maintenance activities, were not repealed. He also argues that the damages contemplated by Section 417 are broader than consequential damages as set forth in Section 612 of the Eminent Domain Code, 26 P.S. §1-612.

The intent of Section 417 of the State Highway Law was to ensure that property owners whose land is damaged as a direct result of PennDOT's entry thereon for the purpose of maintaining highway drainage systems receive compensation for the actual damages caused by PennDOT. Section 612 of the Eminent Domain Code permits abutting property owners recovery of consequential damages as a result of only three causes: (1) change of grade of a road or highway; (2) permanent interference with access to a road or highway; and (3) injury to surface support. None of the circumstances covered by Section 612 of the Eminent Domain Code is applicable to the situation addressed by Section 417 of the State Highway Law. We therefore agree with Oxford that the General Assembly, when it enacted Act 100 which repealed the procedural portions of Section 417 of the State Highway Law, did not repeal the substantive portion of that section allowing property owners compensation for damages resulting from PennDOT's entry upon their land for drainage system maintenance.

We are, however, convinced that the damages recoverable by a property owner under Section 417 are similar to the consequential damages recoverable by an abutting property owner under Section 612 of the Eminent Domain Code. "Consequential damage" has been defined as an injury to property which occurs as a natural result of an act lawfully done. *In re Mitchell,* 209 Pa. Superior Ct. 288, 228 A.2d 53 (1967). Damages to abutting property resulting from a substantial change in the natural flow of water as a result of highway construction have been held to be recoverable as consequential damages under Section 612. *Department of Transportation v. Palmer Township,* 16 Pa. Commonwealth Ct. 270, 329 A.2d 871 (1974); *Capristo v. Commonwealth,* 58 Pa. D. & C. 2d 715 (C. P. Luzerne 1972). Therefore, if

PennDOT's drainage maintenance work had substantially altered the natural flow of water, damages resulting therefrom would be recoverable by the property owner under Section 417 of the State Highway Law.

It is clear from the record of the evidentiary hearing that this is not the case here. The common pleas court found that PennDOT's maintenance work restored the flow of water from the highway to substantially what it was as far back as 1963. The record also shows that Oxford had, over the years, installed an underground pipe and a stone wall and hedgerow which impeded the natural flow of runoff water from PennDOT's drainage ditches.[4] By cleaning out its pre-existing drainage system and partially dismantling the obstructions erected by Oxford, PennDOT was merely restoring the natural flow of water, not substantially changing it. The common pleas court correctly concluded that PennDOT did not substantially alter the flow of water from the highway and that Oxford did not make out a case for consequential damages.

We shall now address Oxford's alternative contention which is that PennDOT's maintenance work which resulted in the periodic flooding of approximately six acres of his farmland effected a de facto taking of that property entitling him to compensation. A de facto taking occurs when an entity having the power of eminent domain substantially deprives a property owner of his rights to the beneficial use and enjoyment of his property as a consequence of a nonappropriative act rather

---

[4] 36 P.S. §670-417 also provides that it is a summary offense for any person to stop, fill up, or injure a highway drainage ditch or system, or divert or change the course of the runoff water without authority from PennDOT. Oxford's erection of the hedgerow and stone wall to impede and obstruct the flow of water from PennDOT's highway drainage system seems to have been in violation of this provision.

than by direct appropriation. *Espy v. Butler Area Sewer Authority*, 63 Pa. Commonwealth Ct. 95, 437 A.2d 1269 (1981). In order to establish a de facto taking, the property owner must establish extraordinary circumstances which have substantially deprived him of the use of his property and that such deprivation is the direct and necessary consequence of actions of an entity having the power of eminent domain. *Petition of 1301 Filbert Ltd. Partnership for Appointment of Viewers*, 64 Pa. Commonwealth Ct. 605, 441 A.2d 1345 (1982).

Here, there was no evidence that the condition of Oxford's land was substantially changed or that his customary use of the land has been prevented, except for short periods of time. Any change in the use of the land was the result of PennDOT's removal or dismantling of obstructions to runoff water erected by Oxford and its restoration of the pre-existing drainage conditions. The conditions about which he complains were shown at the evidentiary hearing to have existed as far back as 1963. As noted by the common pleas court, the situation presented here is similar to that presented in *Sanquinetti v. United States*, 264 U.S. 146 (1924), wherein the United States Supreme Court held that there was no de facto taking of land abutting a canal as a result of an occasional overflow from the canal. In *Sanquinetti*, the Court stated that to effectuate a de facto taking, the overflow must constitute an actual, permanent invasion of the land amounting to an appropriation thereof, and not merely an injury to the property. We agree with the common pleas court that Oxford has shown no de facto taking such as would entitle him to compensation under the Eminent Domain Code.

Having found the common pleas court order supported by competent evidence and no error of law committed, we affirm the dismissal of the petition for appointment of a board of view.

ORDER

Now, March 20, 1986, the Order of the Court of Common Pleas of Northampton County, at Docket No. 1980-CM-3223, dated February 1, 1985, which sustained the preliminary objections of the Pennsylvania Department of Transportation and dismissed the petition of David Oxford for appointment of a board of view, is hereby affirmed.