In re CONDEMNATION BY the COMMONWEALTH of Pennsylvania DEPARTMENT OF TRANSPORTATION OF CERTAIN PROPERTY IN the BOROUGH OF BELLEVUE, Allegheny County Pennsylvania in which an interest may be held by Joseph E. Graff,

Appeal of Joseph E. Graff.

Commonwealth Court of Pennsylvania.

Argued May 7, 2003.

Decided June 13, 2003.

---

Thomas J. Michael, Pittsburgh, for appellant.

Jeffrey L. Giltenboth, Pittsburgh, for appellee.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

Joseph E. Graff (Landowner) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the Department of Transportation's (PennDOT) preliminary objections and dismissed Landowner's petition for the appointment of viewers. Landowner asserts PennDOT's expansion of a cartway within the public right-of-way constituted a *de facto* taking.[1] We affirm.

Landowner owns property at the intersection of Route 65 and Kendall Avenue. Landowner operates his plumbing and heating business in a building on the prop-

---

1. The concept of "de facto" taking is recognized by Section 502(e) of the Eminent Domain Code of 1964 (Code), Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. § 1–502(e), which provides: "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers...."

erty. Landowner uses a portion of the building, including the basement and garage, to store materials for his heating and plumbing business. Access to this part of the property is from Route 65. Also, he rents part of the building to a material handling business accessed from Kendall Avenue.

PennDOT sought to expand Route 65, commonly known as Ohio River Boulevard. At the inception of the project, PennDOT determined it required a temporary construction easement over a portion of Landowner's property adjacent to the roadway. In September 1991, following unsuccessful negotiations, PennDOT filed a declaration of taking to obtain the easement. Landowner filed a petition for appointment of viewers and was awarded monetary compensation. Neither party appealed the viewer's award.

The renovation of Route 65 began ten years later, in 2001. After the commencement of construction, Landowner discovered the edge of the cartway, although still within the public right of way, was closer to his property than originally planned. Reproduced Record (R.R.) at 108a–109a.

The expansion of the cartway impacted Landowner in three ways. First, the roadway's gravel shoulder was eliminated, increasing the proximity of the cartway to Landowner's property. The shoulder, located entirely in the public right-of-way, was previously used by Landowner in the process of ingress, egress, and deliveries. Landowner explained elimination of the shoulder from within the public right-of-way prevents backing trailers into the garage.[2] Also, the shoulder was previously used to "pull onto" to check for oncoming traffic when leaving the property. R.R. at 77a–78a. Pulling onto the shoulder was necessary because Landowner's building obstructs view of the roadway. R.R. at 78a. Further, Landowner used the shoulder as a walking path along the edge of his building. R.R. at 83a.

Second, Landowner asserts the increased proximity of the cartway causes water, snow, and ice from the highway to encroach upon his property. Landowner claims that the "catch basins," constructed to keep water from entering, clog, causing overflow to enter the property. He further claims, with the elimination of the shoulder, plow-trucks now push snow directly onto the property.

Lastly, Landowner asserts that his building now vibrates due to the proximity of traffic. R.R. at 82a.

---

2. Landowner described the impact of the shoulder's elimination as:

Q. Can you receive the same deliveries today?
A. No, I cannot.
Q. Why is that?
A. I don't have room to get off to the boulevard and be able to park the truck safely and unload the truck. I have to use the adjacent piece of property, which is Discount Tires, who is allowing me to unload trucks. That is how I have to do it right now. Most of the stuff we're picking up ourselves. It is just too hard to get the trucks in.

   * * *

Q. Do you transport [supplies] on a trailer?

A. Since 1975, yes.
Q. Can you do that same operation today?
A. No. You can't back a trailer into the garage.
Q. Tell the Court why not? [sp]
A. The reason is in order to back a trailer in I would have to be out on Ohio River Boulevard to the oncoming traffic and back into the garage. Once I was in the garage with the trailer, I won't be able to see to come back out without having someone stand out there and flag me. It is just not safe to do it. I can't do it. I don't have the room to do it.
R.R. at 55a–57a.

Both the material handling business and Landowner's plumbing business continue to operate at the property, although Landowner must obtain supplies rather than having them delivered. R.R. at 54a, 83a.

Landowner filed a second petition for appointment of viewers asserting the cartway's expansion resulted in a *de facto* taking of his property. This petition was dismissed following the failure of Landowner to appear for a hearing after proper notice. R.R. at 23a.

■ Landowner filed a third petition for appointment of viewers raising the same claims. PennDOT filed preliminary objections asserting (i) Landowner received just compensation for the taking in 1991, (ii) there was no evidence of a *de facto* taking, and (iii) Landowner's claim was barred by res judicata and collateral estoppel.[3]

■ The trial court sustained the preliminary objections and dismissed Landowner's petition, stating:

> In this case, the Route 65 roadway was four feet closer to the Graff property line than originally set forth in the original plan, but was within the property owned by the Commonwealth. None of the matters complained of by Graff amounts to the substantial deprivation of the use of his property as required by *Oxford [v. Dep't of Transp.*, 96 Pa. Cmwlth. 68, 506 A.2d 990 (1986),] to establish a *de facto* taking of property. The Commonwealth has constructed the

highway within the original right-of-way. Because of this, Graff received his just compensation ... and is entitled to no further relief.

Trial Court Op. at 2. Landowner appealed to this Court.[4]

Landowner presents three arguments. First, he asserts the trial court's determinations are not supported by substantial evidence. Second, he argues the trial court committed legal error in holding the incursion of snow, ice, and water onto his property from the roadway is not a compensable taking. Finally, he assigns as error the conclusion that Landowner was entitled to no more compensation than he received in 1991 because there was no additional physical taking.

■ A *de facto* taking occurs when an "entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property." *Conroy–Prugh Glass Co. v. Commonwealth* 456 Pa. 384, 388, 321 A.2d 598, 599 (1974). In *Jacobs Appeal*, 55 Pa.Cmwlth. 142, 423 A.2d 442 (1980), this Court defined the elements a property owner must prove to succeed in a *de facto* condemnation proceeding. First, he must show the condemnor has the power of eminent domain. *Id.* Second, he must show "exceptional circumstances" have "substantially deprived him of the use and enjoyment of his property." *Id.* Third, he must show the damages sustained were

---

3. "Preliminary objections are the exclusive method under the Code of raising objections to a petition for the appointment of a board of viewers alleging a *de facto* taking." *Genter v. Blair County Convention and Sports Facilities Auth.*, 805 A.2d 51, 54 n. 6 (Pa.Cmwlth.2002) (citing *Lehigh Northampton Airport Auth. v. WBF Assoc., L.P.*, 728 A.2d 981 (Pa.Cmwlth. 1999)).

4. On appeal, this Court may overturn a trial court's ruling on preliminary objections to a

petition for appointment of a board of viewers only where necessary findings of fact are not supported by competent evidence or an error of law was committed. *Domiano v. Dep't of Envtl. Res.*, 713 A.2d 713 (Pa.Cmwlth.1998). The fact finder must resolve evidentiary conflicts; the trial court's findings will not be disturbed if supported by substantial evidence. *Faleski v. Dep't of Transp.*, 159 Pa. Cmwlth. 548, 633 A.2d 1308 (1993).

the "immediate, necessary and unavoidable consequences of the exercise of the eminent domain power." *Id.*

■ There is no bright line test to determine whether government action results in a *de facto* taking. *Waldron St. Book Co. v. City of Pittsburgh,* 771 A.2d 111 (Pa.Cmwlth.2001). The property owner bears a heavy burden of proof, and "each case turns on its unique factual matrix." *Riedel v. County of Allegheny,* 159 Pa.Cmwlth. 583, 633 A.2d 1325, 1328 (1993).

■ Our first inquiry involves the trial court's determination that Landowner failed to meet the heavy burden of proving a *de facto* taking. Landowner asserts that the trial court's finding was not supported by substantial evidence. He emphasizes the evidence that PennDOT altered its original plans resulting in the cartway edge constructed closer to his property than originally expected, that the catch basins clog, causing water to enter from the roadway, that plows push snow and ice directly onto his property, and that the new proximity to the cartway results in a decrease in the general value of his property.

Landowner relies on *Elser v. Dep't of Transp.,* 651 A.2d 567 (Pa.Cmwlth.1994), in which PennDOT restricted a family's permanent access to their residence by dumping stone onto the driveway. This Court affirmed the trial court's finding that such actions substantially deprived the owners of the use and enjoyment of their property and warranted the award of damages for a *de facto* taking. *Id.*

*Elser* does not require a reversal here, because it is clearly distinguishable on its facts. *Elser* involved the placement of a physical barrier in the owners' permanent access. The present case involves no physical barriers. Moreover, in the present case many of the factors contributing to the alleged diminution of use arise from preexisting dimensional limitations of the property.

We find no error in the trial court's brief findings, which are supported by exhibits and Landowner's testimony. The trial court could find that temporary incursion of water, snow, and ice, the limitation of truck deliveries, and vibration do not rise to the level of substantial deprivation of use. This is especially true here, where Landowner continues operating his business from the property and continues leasing a portion of his building to the materials handling business. *See Genter v. Blair County Convention Sports Facilities Auth.,* 805 A.2d 51 (Pa.Cmwlth.2002) (having a house somewhat less desirable as a residence is not enough to establish a *de facto* taking, particularly when owner does not lose the use of the property).

That Landowner previously made special use of the shoulder in the public right-of-way to overcome dimensional and sight distance limitations on his property does not raise an enforceable expectation that this bare license will continue. *See* 36 P.S. § 670–420(a). Simply put, Landowner did not prove a basis to be compensated for loss of special use of PennDOT property.

■ We next address Landowner's arguments concerning water and snow invading his property. These arguments lack merit.[5] Water overflow can constitute

---

**5.** Before the trial court, PennDOT raised objections to the evidence concerning snow and water flow, arguing such allegations are only relevant in tort proceedings, not eminent domain. In his brief, Landowner argues the trial court never made a definitive finding on PennDOT's objection.

The trial court clearly overruled PennDOT's objections and allowed the testimony concerning snow removal and water flow. R.R.

a *de facto* taking if the overflow becomes an "actual, permanent invasion of the land amounting to an appropriation thereof, and not merely an injury to the property." *Oxford v. Dep't of Transp.*, 96 Pa.Cmwlth. 68, 506 A.2d 990, 994 (1986); *See also Snap–Tite, Inc. v. Millcreek Township*, 811 A.2d 1101 (Pa.Cmwlth.2002). Landowner testified when the catch basins clog water enters his property. R.R. at 79a. The trial court held this proof insufficient to constitute a *de facto* taking. We decline to reconsider the weight of the evidence or to interfere with this determination.[6]

█ Citing *Short v. Commonwealth*, 5 Pa.Cmwlth. 91, 289 A.2d 253 (1972), Landowner also assigns as error the trial court's conclusion that no additional compensation is due because there was no physical taking. This argument arises from the trial court's statement: "[t]he Commonwealth has constructed the highway within the original right-of-way. Because of this, Graff received his just compensation ... and is entitled to no further relief." Trial Court Op. at 2.

Contrary to Landowner's assertions, the trial court did not hold his cause of action was barred either by the 1991 compensa-tion or by the lack of additional physical taking. Instead, the trial court determined Landowner failed to meet his burden of proving "substantial deprivation." The trial court's statement, taken in context, was merely an indication of facts it found relevant. Nothing in the opinion shows the trial court held Landowner's recovery was barred as a matter of law.

Accordingly, the trial court's order is affirmed.[7]

### ORDER

AND NOW, this 13th day of June, 2003, the order of the Court of Common Pleas of Allegheny County is AFFIRMED.

at 78a–80a. Contrary to Landowner's assertion, the trial court did not hold the incursion of snow, ice, and water onto Landowner's property could not constitute a compensable taking in eminent domain; rather, the trial court held they were insufficient to meet Landowner's burden of proving "substantial deprivation." Trial Court Op. at 2.

6. Landowner also asserts the trial court's determination that the cartway was moved four feet closer to his property was not supported by substantial evidence. The amount the roadway expanded was disputed before the trial court. Landowner testified that following the construction, the cartway was expanded from two feet on one end to ten feet on the other. R.R. at 66a. PennDOT's project coordinator testified that, although the original plans called for a four feet expansion, the cartway was actually expanded to be six feet closer. R.R. at 108a, 111a.

The trial court determined the expansion measured four feet. Trial Court Op. at 2. All parties agree the expansion was entirely within the public right-of-way. The increased proximity of the cartway and its impact on Landowner is undisputed. The exact distance the cartway was expanded is not necessary for determining whether PennDOT substantially interfered with Landowner's enjoyment of his property to such a degree it constituted a *de facto* taking. Any slight error in determining the exact distance was harmless.

7. Because this case was resolved in PennDOT's favor, we need not consider PennDOT's argument that Landowner's petition is barred by the doctrines of res judicata and collateral estoppel.