IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John and Janet Morell, h/w, : 
              Appellants : 
                       : 
                       : 
        v. :   No. 625 C.D. 2021
                       : 
Commonwealth of Pennsylvania, : 
Department of Transportation :   Submitted: October 21, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                         FILED: December 28, 2022

Appellants John and Janet Morell, h/w (collectively Morells), appeal two orders that were issued by the Court of Common Pleas of Philadelphia County (Common Pleas) on May 5, 2021. Through those orders, Common Pleas sustained Appellee Commonwealth of Pennsylvania, Department of Transportation's (DOT) preliminary objections and dismissed the Morells' Petition for Appointment of a Board of View (Petition) regarding a property that is owned by the Morells and is located at 2640 East Juniata Street in Philadelphia (Property). After thorough review, we affirm.

## I. Background

On August 3, 1972, DOT filed a declaration of taking (Declaration) for a series of lots,[1] including the Property, in furtherance of constructing a highway

---

[1] The Pennsylvania Constitution establishes that "private property [cannot] be taken or applied to public use, without authority of law and without just compensation being first made or secured." PA. CONST. art. I, § 10.

interchange between the Betsy Ross Bridge and what was then known as Legislative Route 1000.[2] Reproduced Record (R.R.) at 18a, 88a-98a. Thereafter, on June 26, 1973, DOT filed an amended declaration of taking (Amended Declaration), *see id.* at 99a-115a, in which it agreed via stipulation with the Property's then-owner to alter the taking by

> chang[ing] the width of roadway and required right of way for Juniata Street . . . , reducing the area condemned for the said Street, and limit[ing] the estate to be acquired [on the Property to that] required for limited access to an aerial easement plus a surface easement unlimited in vertical dimension for the accommodation of piers and other appurtenances between Stations 36+58 and 38+48 on Ramp H [of the highway.]

*Id.* at 101a; *see id.* at 108a-15a (exhibits showing visual depiction of this taking).[3] In addition, this Amended Declaration of taking provided, in relevant part:

> Where the estate to be acquired [by DOT] is limited to an aerial easement plus a surface easement unlimited in vertical dimension for the accommodation of piers and other appurtenances, the following limitations shall be imposed on the use of the property beneath the area affected by the aerial easement:
>
> . . . .
>
> > (5) No interference shall be made with the right which is in the Commonwealth of Pennsylvania [sic], to enter upon the property beneath the area affected by the aerial easement, for the purpose of

---

[2] The parties are in agreement that this interchange now connects I-95 to the Betsy Ross Bridge. *See* DOT's Br. at 7; Morells' Br. at 6.

[3] At the time, the Property was part of a larger parcel of land, which had an address of 4185 East Thompson Street, Philadelphia, Pennsylvania. *See* R.R. at 18a-19a, 90a. Neither DOT nor the Morells dispute that the 1972 Declaration and the 1973 Amended Declaration, both of which specified that 4185 East Thompson Street would be included in DOT's taking, also apply to the Property. *See* DOT's Br at 3-7; Morell's Br. at 14-17.

> inspection, maintenance, repairs, reconstruction or alteration of the structure and other appurtenances.

*Id.* at 114a. This Amended Declaration of taking also established temporary easements, to allow for construction, but stated that they would "revert to the property owner upon the acceptance of the project by [DOT]." *Id.*

On October 29, 2007, Mr. Morell purchased the Property from B.K. Enterprises, Inc. *Id.* at 122a-24a. Mr. Morell then signed a deed of confirmation on November 27, 2007, which was "recorded to correct the legal description which was erroneously recorded in the aforesaid Deed dated October 29th, 2007[.]" *Id.* at 116a-17a. This deed of correction describes the Property, in relevant part, as "crossing the access ramp [right-of-way] off the Betsy Ross Bridge[.]" *Id.* at 116a. Thereafter, on November 26, 2008, Mr. Morell conveyed the Property to himself and his wife via an indenture, which also described the Property's bounds in the same manner. *See id.* at 129a-32a.

At some point thereafter, DOT began making plans to improve the highway ramp that crossed the Property, as part of its broader, long-term project to rebuild the portions of I-95 that traverse Pennsylvania. *See* R.R. at 18a, 58a. On July 2, 2019, Interstate Acquisition Services[4] contacted the Morells via letter, in order to notify them that "[DOT had] recently held a meeting to discuss the personal property located in [the] aerial easement area beneath the I-95 ramp" and asked the Morells to reply, due to the fact that the pending project would potentially affect the Morells' property interests. *Id.* at 134a. Interstate Acquisition Services then sent additional letters on September 11, 2019, and January 24, 2020, after which the Morells

---

[4] It appears that Interstate Acquisition Services was responsible for handling these kinds of situations on DOT's behalf. *See* R.R. at 134a-35a, 37a (letters to the Morells from Amy Tracey, which identify her as being employed by Interstate Acquisition Services); *id.* at 141a (letter from DOT to the Morells, which states, in relevant part, that "[their] Right- of- Way Representative is[] Amy Tracey").

accepted DOT's offer to pay them $4,940 to cover the cost of transporting their personal property out of the easement area. *See id.* at 135a-48a.

The Morells eventually retracted their acceptance of this offer and, on September 25, 2020, filed their Petition in Common Pleas. Therein, the Morells alleged that DOT's highway improvement project went beyond the scope of its aforementioned easement interests, which it had obtained through the Amended Declaration, and, thus, constituted a *de facto* condemnation of the Property. *See id.* at 35a-38a.[5] Accordingly, the Morells sought to have Common Pleas appoint a board of viewers and to task its members with assessing the damages incurred by the Morells as a result of this putative taking. *Id.* at 38a.

DOT responded on October 15, 2020, by filing preliminary objections to the Petition.[6] In doing so, DOT argued that the Morells' *de facto* taking claim was

---

[5] Specifically, the Morells claimed that:

> [They] have been deprived of the full use and enjoyment of their [P]roperty in that they are unable to acquire personal property which would be stored on the subject property due to the fact that construction on their [P]roperty will be ongoing for years. Moreover, the fair market value of the . . . [P]roperty is severely diminished owing to that portion of it which is being taken. Moreover, unlike the notice provided to the . . . [P]roperty['s] owners in 1972, there is nothing here that limits the acquisition to a mere temporary construction easement. Moreover, [their] use and enjoyment of the[] [P]roperty will be utterly usurped by the construction taking place on their [P]roperty.

R.R. at 37a.

[6] "Preliminary objections are the exclusive method under the [Eminent Domain] Code[, 26 Pa. C.S. §§ 101-1106,] of raising legal and factual objections to a petition for appointment of viewers that alleges a *de facto* taking, and the petition may not be dismissed by the trial court without first conducting an evidentiary hearing to determine whether a *de facto* taking has occurred." *Linde Enterprises, Inc. v. Lackawanna River Basin Sewer Auth.*, 911 A.2d 658, 662 (Pa. Cmwlth. 2006).

speculative and without merit, because the highway improvement project, insofar as it would take place on the Property, was only happening within the bounds of the easement interests DOT had previously acquired and would not substantially deprive the Morells of the use of the Property. *Id.* at 56a-82a. As such, DOT maintained that the Morells were not entitled to the appointment of a board of viewers. *Id.* at 82a.

Common Pleas then held a hearing regarding the Petition on May 5, 2021. During the course of this hearing, Paul Shultes, a consultant project manager for DOT, explained that DOT had demolished the original highway ramp that had crossed over the Property and was in the midst of replacing it with a new ramp that was in the same location as its predecessor. *See id.* at 18a-21a. In Mr. Shultes' opinion, this work did not condemn any additional portions of the Property, "[b]ecause [DOT] already had the right of way it needed for the project [as a result of the Amended Declaration]." *Id.* at 19a. Additionally, Mr. Shultes took the position that the new highway ramp constituted permissible "reconstruction" of the original ramp, because it "rebuil[t or] replace[d] . . . a [highway] facility that already exists" and did not "construct[] a . . . facility that was never there before." *Id.* at 18a. Mr. Morell then confirmed that DOT had demolished the old highway ramp, but stated that DOT had also removed the pier on the Property that had supported that ramp and had built a new one that was approximately 20 feet closer to his home than the original. *Id.* at 22a. Mr. Morrell claimed that the new pier prevented him and his wife from using the Property's rear yard, blocked their view, and stood athwart their fence line in a manner which had both caused DOT to remove the fence and would prevent it from being reinstalled in the same location after DOT had completed the new ramp. *Id.* at 22a-23a. Additionally, Mr. Morell asserted that DOT's construction on the Property was excessively loud, was filling his gutters with mud and causing trees

5

to grow in them, was spreading dirt into his home, and was using vehicles in a dangerous way, insofar as "getting in and out of our home, leaving, going, you have to be careful you don't get run over." *Id.* at 23a. Common Pleas then took the matter under advisement and gave DOT and the Morells leave to file supplemental, post-hearing briefs,[7] but swiftly changed course later that day, issuing an order after the hearing's close, through which it sustained DOT's preliminary objections and dismissed the Petition. This appeal followed shortly thereafter.

## II. Discussion

The Morells offer several arguments for our consideration, through which they assert that Common Pleas abused its discretion and erred as a matter of law when it dismissed the Petition. We reorder and summarize these arguments as follows.[8] First, DOT's highway improvement project has caused a *de facto* condemnation of the Property via new construction within the Property's easement area. Morell's Br. at 10-17. Second, regardless of whether this construction is "new," DOT has effected a *de facto* condemnation by failing to secure a temporary construction easement over the Property to replace the one that expired nearly five

---

[7] Speaking from the bench, Common Pleas gave the Morells 7 days to file their supplemental brief and directed DOT to file its response thereto within 14 days. *See* R.R. at 27a.

[8]     Our review of a [court of common pleas'] order [adjudicating] preliminary objections to a petition for the appointment of [a board of] viewers is to determine whether the [lower] court abused its discretion or committed an error of law. *Maurizi v. [Dep't] of Transp*[.], 658 A.2d 485, 486 n.2 (Pa. Cmwlth. 1995). The . . . court [of common pleas], as fact finder, must resolve evidentiary conflicts, and its findings will not be disturbed if supported by substantial evidence. *In re Condemnation by [Dep't] of Transp*[.], 827 A.2d 544, 547 n.4 (Pa. Cmwlth. 2003)[.]

*In Re Mountaintop Area Joint Sanitary Auth.*, 166 A.3d 553, 559 n.8 (Pa. Cmwlth. 2017). "Substantial evidence is such relevant evidence as a reasonable person would consider adequate to support a finding." *Bouch v. State Ethics Comm'n*, 848 A.2d 1078, 1080 (Pa. Cmwlth. 2004).

6

decades ago upon completion of the original highway ramp. *Id.* at 21-22. Third, DOT's actions have substantially deprived the Morells of the use and enjoyment of the Property, and, as a result, a board of viewers must determine the compensation they should receive from DOT. *Id.* at 18-20. Finally, Common Pleas should not have contravened its own bench-issued directive by ruling upon DOT's preliminary objections without waiting for the parties to submit their respective supplemental briefs. *Id.* at 23-24.

As we have explained in the past:

> "[A] *de facto* taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property." *In re De Facto Condemnation and Taking of Lands of WBF Associates, L.P. ex rel. Lehigh-Northampton Airport Authority*, . . . 903 A.2d 1192, 1199 ([Pa.] 2006). A property owner carries a heavy burden of proof in *de facto* condemnation proceedings and must show that: (1) the condemnor has the power to condemn the land under eminent domain procedures; (2) that exceptional circumstances have substantially deprived him of the use and enjoyment of his property; and (3) the damages sustained were the immediate, necessary, and unavoidable consequences of the exercise of the eminent domain power. *Genter v. Blair* [*Cnty.*] *Convention and Sports Facilities Auth*[.], 805 A.2d 51, 56 (Pa. Cmwlth. 2002). Finally, when determining whether a *de facto* taking has occurred, we focus on the governmental action in question. *Appeal of Jacobs*, . . . 423 A.2d 442, 443 ([Pa. Cmwlth.] 1980).
>
> On the other hand, acts that are not the immediate, necessary or unavoidable consequence of the exercise of eminent domain will not form the basis of *de facto* condemnation. *Fulmer v. White Oak Borough*, . . . 606 A.2d 589, 590 ([Pa. Cmwlth.] 1992). "Generally, where a landowner suffers specific damage to his property as a result of the negligent acts of a party with the power of eminent domain, the proper action lies in trespass." *Poole*

> > *v.* [*Twp.*] *of District*, 843 A.2d 422, 424 (Pa. Cmwlth. 2004).

*In Re Mountaintop Area*, 166 A.3d at 561.[9]

With these general precepts in mind, we turn to the question that is at the heart of this matter: has a *de facto* condemnation of the Property occurred as a result of DOT's highway improvement project, or are DOT's project-related activities on the Property instead authorized by the existing, half-century-old Amended Declaration? The answer to this question hinges on both the nature of DOT's project and the breadth of the easement rights DOT secured through the Amended Declaration. "It is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants." *Zettlemoyer v. Transcon. Gas Pipeline Corp.,* 657 A.2d 920, 924 (Pa. 1995).

> In ascertaining the scope of an easement created by an express grant, the intention of the parties to the grant must be advanced. . . . Such intention (of the parties) is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.

*Lease v. Doll*, 403 A.2d 558, 561 (Pa. 1979) (citations and some punctuation omitted). In keeping with this, where the breadth of an easement is unambiguously defined, the plain language of the establishing agreement controls. *Zettlemoyer*, 657 A.2d at 924. However, where the nature of the easement is defined in an ambiguous way, "we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant." *Id.* Furthermore, as the same canons of construction

---

[9] "Nevertheless, the two species of action are not mutually exclusive. A judgment in trespass does not bar a subsequent condemnation claim." *In Re Mountaintop Area*, 166 A.3d at 561 (citing *Matter of Condemnation by Urban Redevelopment Auth. of Pittsburgh*, 458 A.2d 622, 623 (Pa. Cmwlth. 1983)).

are applicable to both contracts and easement grants, a court must interpret undefined words in an easement grant according to their ordinary meanings. *See id.*; *Pines Plaza Bowling, Inc. v. Rossview, Inc.,* 145 A.2d 672, 676 (Pa. 1958). In order to do so, courts may make use of dictionaries to ascertain the common understanding of such undefined words. *TIG Specialty Ins. Co. v. Koken*, 855 A.2d 900, 910 (Pa. Cmwlth. 2004). Finally, interpretation of an easement agreement is a question of law and thus, we consider the Amended Declaration through a standard of review that is *de novo* and a scope of review that is plenary. *See Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015); *Zettlemoyer*, 657 A.2d at 924; *Percy A. Brown & Co. v. Raub*, 54 A.2d 35, 43-44 (Pa. 1947)

Though the Morells do not dispute that DOT is building the new ramp and its support structures within the existing, already acquired easement area, *see* Morells' Br. at 9-10, they nevertheless maintain that DOT's project goes beyond what is permitted by the Amended Declaration. We disagree. Again, the Amended Declaration expressly provides that

> [w]here the estate to be acquired [by DOT] is limited to an aerial easement plus a surface easement unlimited in vertical dimension for the accommodation of piers and other appurtenances, the following limitations shall be imposed on the use of the property beneath the area affected by the aerial easement:
>
> . . . .
>
> > (5) No interference shall be made with the right which is in the Commonwealth of Pennsylvania [sic], to enter upon the [P]roperty beneath the area affected by the aerial easement, for the purpose of inspection, maintenance, repairs, reconstruction or alteration of the structure and other appurtenances.

R.R. at 114a; *see id.* at 99a-102a (1973 stipulation between DOT and Property's then-owner, which articulates the breadth of DOT's taking). Thus, DOT not only

condemned these aerial and surface easements through the Amended Declaration, but secured the right to alter, inspect, maintain, reconstruct, or repair the highway ramp and its appurtenances, including the original support pier that had been installed on the Property. *Id.*

As noted above, DOT's position during the hearing was that the new ramp constituted "reconstruction" of its predecessor and, thus, was authorized through the Amended Declaration. *See id.* at 18a. The term "reconstruction" is not defined in the Amended Declaration, but Merriam-Webster characterizes it, in relevant part, as "the act or process of rebuilding, repairing, or restoring something[.]"[10] The new highway ramp and its appurtenances, including the new support pier that DOT has already placed upon the Property, have taken and will take the place of the original structures and, thus, constitute rebuilds of their predecessors. Nor does DOT's placement of the new support pier in a different location change this calculus, because the entirety of the attendant construction, as it relates to the Property, is within the easement area DOT acquired decades ago.

Furthermore, DOT's failure to secure new temporary construction easements is of no moment. To reiterate, the Amended Declaration expressly states that "[n]o interference shall be made with [DOT's] right to enter upon the [P]roperty beneath the area affected by the aerial easement, for the purpose of . . . [such] reconstruction[.]" *Id.* at 114a. It follows, then, that DOT has the right to access its aerial and surface easements by crossing parts of the Property that the Morells still own, a right which is *completely unaffected* by the long-ago reversion of the aforementioned temporary construction easements. *See Edgett v. Douglass*, 22 A. 868, 868 (Pa. 1891) (easement grant that authorizes grantee to conduct certain

---

[10] *Reconstruction*, Merriam-Webster.com. https://www.merriam-webster.com/dictionary/reconstruction (last visited December 27, 2022).

activities therein necessarily imbues grantee with implied right to access easement area in furtherance of such activities).

### III. Conclusion

Given all of this, we conclude that Common Pleas correctly determined that DOT has not effected a *de facto* condemnation of the Property and, thus, did not abuse its discretion or commit an error of law by sustaining DOT's preliminary objections and dismissing the Morells' Petition.[11]

_____
ELLEN CEISLER, Judge

---

[11] As for the Morells' remaining issue, we agree with them that it was not appropriate for Common Pleas to rule upon DOT's preliminary objections mere hours after giving the parties leave to file supplemental briefs. Instead, Common Pleas should have waited until after the parties had submitted those briefs or, at minimum, given them advance notice of and an explanation for its change of heart. Common Pleas' assertion "that at no time did it explicitly indicate, or agree that it would withhold its ruling in this case until submission of supplemental briefing by the parties[,]" Common Pleas Op. at 11, is disingenuous, as any reasonable person would assume that when a court grants a request of this nature, it actually intends to allow the requester to make use of that dispensation. Indeed, litigants should be able to rely upon a court's pronouncements, without concern that those pronouncements might inexplicably be changed on a whim. With that said, however, Common Pleas' failure to abide by its own pronouncement from the bench does not serve as a basis for vacating or reversing the challenged orders, because Common Pleas properly sustained DOT's preliminary objections and dismissed the Morells' Petition, and the Morells failed to articulate any substantive basis for how or why a supplemental brief would have changed that outcome.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John and Janet Morell, h/w, :
               Appellants :
  :
     v. : No. 625 C.D. 2021
  :
Commonwealth of Pennsylvania, :
Department of Transportation :

**O R D E R**

AND NOW, this 28th day of December, 2022, the Court of Common Pleas of Philadelphia County's (Common Pleas) May 5, 2021 orders, through which Common Pleas sustained Appellee Commonwealth of Pennsylvania, Department of Transportation's preliminary objections and dismissed Appellants John and Janet Morell, h/w's Petition for Appointment of a Board of View, is AFFIRMED.

_____
ELLEN CEISLER, Judge